COMMISSIONER OF INTERNAL REVENUE, Plaintiff–Appellant,

v.

Bonnie A. MILLER, Defendant–Appellee.

No. 89–1851.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1990.

Decided Sept. 21, 1990.

Ann Belanger Durney, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Laura Marie Conley O'Hanlon, Tax Div., U.S. Dept. of Justice, Washington, D.C., on brief) for plaintiff-appellant.

S. Ronald Ellison, Fedder and Garten, P.A., Baltimore, Md., argued (Kenneth D. Pack, Fedder and Garten, P.A., Baltimore, Md., on brief), for defendant-appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

MURNAGHAN, Circuit Judge:

The question presented in the case before us is whether the portion of a defamation action settlement properly attributed to punitive damages is excludable from gross income pursuant to 26 U.S.C. § 104(a)(2).

I

Bonnie A. Miller succeeded in obtaining a large settlement of two lawsuits brought for defamation and intentional infliction of emotional distress. The *ad damnum* for the first of the two suits, which Miller brought in the Superior Court of (now the Circuit Court for) Baltimore City, was $10,000,000, with an additional claim of $10,000,000 in punitive damages. The *ad dam-*

*num* in the second suit, which was brought in the Circuit Court for Baltimore County, was $15,000,000, with a $15,000,000 claim in punitive damages. The jury returned a verdict in the first suit of $950,000 made up of $500,000 in compensatory damages and $450,000 in punitive damages, with no portion of the award attributable to intentional infliction of emotional distress. Following the jury verdict, Miller entered into settlement negotiations with the defendants in both suits. The negotiations produced a general release discharging all defendants from liability, with Miller accepting therefor a payment of $900,000. That payment did not provide for any allocation of the settlement proceeds between the two cases, or between the claims for compensatory damages and the claims for punitive damages. After payment of legal fees and costs from the settlement amount totaling $375,000, Miller received as net settlement proceeds $525,000.

Miller's legal complications were, however, not ended. She, regarding the settlement proceeds as excludable from her federal income tax, did not include on her tax return any part of the $525,000 in settlement. The Internal Revenue Service took the position that all of the settlement proceeds were taxable, leading to a deficiency of $249,106, plus an addition under Internal Revenue Code § 6661 of $62,254.[1]

The case was tried in the Tax Court. Miller argued that the settlement proceeds were not subject to tax by relying upon § 104(a)(2) of the Internal Revenue Code. *See* 26 U.S.C. § 104(a)(2). That section excludes from income "the amount of any damages received whether by suit or agreement ... on account of personal injuries or sickness." The Government challenged Miller's position on two grounds. First, the Government asked the court to read into § 104(a)(2) distinctions based on the kinds of injuries that result from a given tortious action. Although the record is not

---

1. Title 26 U.S.C. § 6661(a) provides:
   If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement.

   We observe that $62,254 is 25 percent of $249,016, not $249,106, as claimed by the Government. Because nothing in our opinion requires us to explain this apparent error, we pursue the matter no further.

free from doubt, it appears from the Tax Court's opinion that the Government argued either that only damages to personal, as opposed to professional, reputation should be excluded from gross income or that only damages for physical, as opposed to nonphysical, injury should be compensated. The second argument advanced by the Government was that § 104(a)(2) should be read to exclude from gross income only compensatory, as opposed to punitive, damages. Thus, the Government argued, to the extent that some portion of the settlement proceeds represented punitive damages, that portion was to be included in Miller's gross income.[2]

The Tax Court rejected, though not unanimously, both of the Government's arguments. *Miller v. Commissioner*, 93 T.C. 330 (1989). The court rejected the Government's first argument by reviewing the Tax Court and appellate court opinions that had rejected the drawing of distinctions, for § 104(a)(2) purposes, among kinds of personal injuries or kinds of harm flowing from those injuries. *Id.* at 334–37. The court saw no reason to depart from those holdings. *Id.* at 337.

The court rejected the Government's second argument by examining the phrase "any damages received ... on account of personal injuries." *Id.* at 337–41. Giving the words "any" and "on account of" what it considered to be their ordinary meaning, the court concluded that the "plain meaning" of § 104(a)(2) indicated that punitive damages were within the section's ambit and, therefore, were to be excluded from gross income. The court noted that "Webster's defines the phrase 'on account of' as: 'For the sake of,' 'by reason of,' or 'because of.' These phrases suggest causa-

tion." *Id.* at 339 (citation omitted). The court further relied upon *Burford v. United States*, 642 F.Supp. 635 (N.D.Ala.1986), which held that proceeds received as settlement of an action brought pursuant to Alabama's wrongful death statute were within § 104(a)(2) and, therefore, excluded from gross income, even though Alabama law labels wrongful death proceeds as "punitive." 93 T.C. at 338–39. The court recognized the canon of statutory interpretation requiring that exclusions from income be narrowly construed, *id.* at 340; however, the court declined to apply the canon, applying instead the canon that a court "should not disregard the plain meaning of a statute except to prevent an absurd result or one that is contrary to legislative intent." *Id.* at 340–41. Finding no absurdity in its result or contradiction in the legislative history, the court held for Miller.[3] Two judges dissented. *Id.* at 345–52.

The Government has appealed. On appeal, the Government no longer asserts its argument regarding distinctions among various forms of injuries or various forms of compensatory damages. Instead, the Government argues only the second point it argued below, namely, that punitive damages are not within § 104(a)(2), and, therefore, are not excluded from gross income.[4]

## II

### A

We begin with the proposition that gross income includes "all income from whatever source derived." 26 U.S.C. § 61(a). Section 104(a)(2) excludes from gross income settlement proceeds received "on account

2. The Government justified its claim to *all* of the settlement proceeds by arguing that the burden was on Miller to show what portion of the settlement was compensatory. Until she met that burden, the Government argued, the entire settlement award was to be included in gross income.

3. The court's holding that Miller had not understated her tax made it unnecessary to address the Government's claim under § 6661.

4. Congress has since amended § 104(a)(2) such that it now explicitly does not exclude from gross income "punitive damages in connection with a case not involving physical injury or physical sickness." Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7641, 1989 U.S.Code Cong. & Admin.News (103 Stat.) 2106, 2379. The Government concedes, however, that the amendment does not apply to the case at bar.

of personal injuries or sickness." To determine whether Miller's settlement award may be excluded pursuant to § 104(a)(2), "the nature of the cause of action and the injury to be remedied must be identified." *Thompson v. Commissioner*, 866 F.2d 709, 711 (4th Cir.1989); *see generally id.* (analyzing separately claim for back pay and claim for liquidated damages). That inquiry requires consideration of the Maryland law that created Miller's entitlement to relief. *See Roemer v. Commissioner*, 716 F.2d 693, 697 (9th Cir.1983) ("we must look to state law to analyze the nature of the claim litigated").

Under Maryland law, a defamation action such as Miller's is an action for personal injuries. *See New York, Philadelphia and Norfolk R.R. Co. v. Waldron*, 116 Md. 441, 453, 82 A. 709, 714 (1911). However, it must also be recognized that, under Maryland law, "[p]unitive damages are inherently different from compensatory damages and the reasons for the award of each differ sharply." *Exxon Corp. v. Yarema*, 69 Md.App. 124, 137, 516 A.2d 990, 997 (1986), *cert. denied*, 309 Md. 47, 522 A.2d 392 (1987). A punitive damages award "does not attempt to compensate the plaintiff for harm suffered by him, but rather is exemplary in nature and is over and above any award of compensatory damages." *Id.* In the context of a defamation action, the Maryland Court of Special Appeals has commented that "[e]xemplary or punitive damages, as the name connotes, are rather a punishment for and deterrent to wrongdoing than a means of recompensing the

victim. To the victim they are a windfall not necessarily related to the injury he has suffered." *Cheek v. J.B.G. Properties, Inc.*, 28 Md.App. 29, 34, 344 A.2d 180, 184 (1975).[5]

Against that doctrinal background, we now review the Tax Court's conclusion that even those portions of Miller's settlement proceeds properly attributable to punitive damages are to be excluded from gross income pursuant to § 104(a)(2).

## B

At the outset, we reject the conclusion of the Tax Court that the plain meaning of § 104(a)(2) compels exclusion of punitive damages from gross income. We do not quarrel with the court's observation that "on account of" suggests "causation." However, in our view, that observation blithely smooths over the distinction between "but-for" causation and "sufficient" causation. Under a but-for causation approach, the fact that a plaintiff has to sustain a personal injury as a prerequisite to an award of punitive damages leads to the conclusion that the punitive damages were "on account of" the plaintiff's injury, even though a punitive damage award requires the additional showing of, and is responsive only to, egregious conduct by the defendant.[6] However, under a sufficient causation approach, the fact that personal injury is a prerequisite to punitive damages does *not* lead to the conclusion that the punitive damages were "on account of" the plaintiff's injuries because,

---

**5.** The *Cheek* court quoted with approval the language in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), that punitive damages "are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Id.* at 350, 94 S.Ct. at 3012.

**6.** The Government urges upon us the point that under Maryland law punitive damages may be awarded in defamation action even if no actual injury has been demonstrated. *See* Government's Brief at 23 (citing, among other cases, *Hearst Corp. v. Hughes*, 297 Md. 112, 121, 466 A.2d 486, 490 (1983)). Miller counters that the

Maryland rule represents not a willingness to award punitive damages in the absence of actual injury, but still follows the time honored rule that an injury justifying compensatory damages is a necessary prerequisite to an award of punitive damages. *Hearst*, Miller contends, merely evinces a willingness to presume the existence of injury because actual injury can be hard to prove in a defamation case. Because, for the reasons shown below, our decision does not turn on the point disputed by the parties, we, for the sake of simplicity, assume *arguendo* that Miller is correct that some injury, whether proved or presumed, is a prerequisite to an award of punitive damages.

even if the other elements of the tort are present, personal injury alone does not sustain a punitive damage award. The fact that a plaintiff seeking punitive damages has to show egregious conduct by the defendant indicates that the plaintiff's injury was not a sufficient cause of the punitive damages. Thus, the mere fact that "on account of" suggests "causation" does not answer the question of whether "on account of" suggests but-for causation or sufficient causation. Because § 104(a)(2) itself begs that ultimate question, we cannot conclude, as the Tax Court did, that the section's plain meaning calls for the but-for approach leading to the exclusion from gross income of punitive damages on the grounds that personal injury is a prerequisite to punitive damages. Instead, we find that § 104(a)(2) is ambiguous as to which form of causation is intended by "on account of." [7]

### C

■ Given the inherent ambiguity of § 104(a)(2), we must resort to extrinsic aids to interpretation. Relying upon two such aids, we conclude that punitive damages in a Maryland defamation action do not fall within § 104(a)(2), and they are, therefore, included in Miller's gross income.

First, as the Tax Court recognized, it is a well-recognized, even venerable, principle that exclusions to income are to be construed narrowly. See, e.g., Commissioner v. Jacobson, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949) ("The income taxed is described in sweeping terms and should be broadly construed in accordance with an obvious purpose to tax income comprehensively. The exemptions, on the other hand, are specifically stated and should be construed with restraint in the light of the

same policy."). Given that § 104(a)(2)'s language is not plain, the principle is applicable and inclines us to adopt the Government's more restrictive view of what kinds of damages are excludable from gross income under the section. See Roemer, 716 F.2d at 700 (characterizing as "liberal" the same interpretation of § 104(a)(2) adopted by the Tax Court).

Second, the Government's interpretation of § 104(a)(2) comports better with the section's underlying purpose. In discussing the section, the Ninth Circuit has observed that "[d]amages paid for personal injuries are excluded from gross income because they make the taxpayer whole from a previous loss of personal rights—because, in effect, they restore a loss to capital." Starrels v. Commissioner, 304 F.2d 574, 576 (9th Cir.1962). In so commenting, the Ninth Circuit aptly relied upon the Supreme Court's comment, in another context, that "[p]unitive damages, on the other hand, cannot be considered a restoration of capital for taxation purposes." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 432, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955). See also 1 B. Bittker, Federal Taxation of Income, Estates and Gifts para. 13.1.4 (1981) ("The rationale for [§ 104(a)(2) ] ... is presumably that the recovery does not generate a gain or profit but only makes the taxpayer whole by compensating for a loss.") It also is worth noting that § 104 is entitled "Compensation for injuries or sickness." (Emphasis added.) The Tax Court's interpretation of § 104(a)(2) extends the section to situations in which a plaintiff's damages do not serve to make a plaintiff whole and thus runs afoul of the section's purpose.

Applying those principles of statutory interpretation, we conclude that the Tax

---

**7.** Baltimore Orioles pitcher Jim Palmer's recent induction into the Baseball Hall of Fame illustrates, in a non-legal context, the difficulty with the Tax Court's conclusion that "on account of" plainly suggests but-for causation. It is certainly true that being associated with baseball is a prerequisite or a but-for cause to Hall of Fame induction. However, it would seem to strain ordinary usage to say that Palmer was inducted "on account of" his being associated with baseball. It would be equally if not more natural to employ a sufficient causation approach and say that Palmer was inducted "on account of" his superb career as a Major League baseball player.

Court erred by holding that even to the extent that Miller's settlement represents punitive damages the settlement falls within § 104(a)(2) and is therefore excluded from gross income. Such damages are a "windfall," *see Cheek,* 28 Md.App. at 34, 344 A.2d at 184, being "over and above any award of compensatory damages," *see Exxon,* 69 Md.App. at 137, 516 A.2d at 997, and, therefore, fall beyond § 104(a)(2)'s reach.

### D

We note further that nothing in our analysis is inconsistent with the case law that has developed around § 104(a)(2). First, our holding is consistent with the conclusion we reached in *Thompson, supra.* In *Thompson,* we held that liquidated damages awarded to the taxpayer pursuant to the Equal Pay Act were excludable from gross income. We specifically noted that the liquidated damage award served both a deterrent *and* compensatory purpose. 866 F.2d at 712. Thus, in *Thompson,* we did not face the issue now before us of whether punitive damages, which serve *no* compensatory purpose, are to be included in gross income.[8]

We consider misplaced the Tax Court's reliance upon *Burford, supra.* As noted above, *Burford* held excludable settlement proceeds received under the Alabama wrongful death statute, Ala.Code § 6-5-410 (1975). Although Alabama law "labeled" wrongful death proceeds as "punitive," the *Burford* court's close inspection of Alabama law uncovered an Alabama case "rejecting the precise argument advanced in [*Burford*]—that such damages are obtained for punitive rather than compensatory purposes." 642 F.Supp. at 637 (citing *American Fidelity & Casualty Co.*

*v. Werfel,* 230 Ala. 552, 162 So. 103, 106 (1935)). The *Burford* court reviewed other Alabama decisions that "reinforce the common sense conclusion that wrongful death proceeds result from personal injuries." 642 F.Supp. at 638 n. 5. In contrast to the *Burford* court's examination of Alabama wrongful death law, our examination of Maryland law has indicated that punitive damages in a Maryland defamation action are purely punitive and do not compensate.

It is of little moment that the Commissioner at one time construed § 104(a)(2) to exclude from income punitive damages and that the Ninth Circuit held (relying on Rev. Rul. 75-45, 1975-1 C.B. 47) the then Commissioner's "liberal" interpretation to control. *See Roemer,* 716 F.2d at 700. The Ninth Circuit was merely presenting proof that when in Rome one should do as the Romans do. However, in the first place, the Commissioner's subsequent shift in position calls for *Roemer,* as a Roman, to shift also. At least, statutory ambiguity is clearly revealed, thereby activating the principle, noted above, that exclusions from income are to be narrowly construed. In the second place, the making of an error does not recommend, let alone, necessitate, its repetition. *Becker v. Commissioner,* 751 F.2d 146, 150 (3d Cir.1984). The Commissioner does not, in circumstances such as those in the present case, adhere to a dubious construction such as was applicable in *Roemer.* Rev.Rul. 84-108, 1984-2 C.B. 32. *See* Rev.Rul. 85-98, 1985-2 C.B. 51.

Miller has argued that it is unfair to apply the Commissioner's "new" rule to her case because she detrimentally relied upon the Commissioner's "old" rule when she negotiated her settlement. While Miller's argument evokes some sympathy,

---

8. Nor is there inconsistency between, on the one hand, our decision to distinguish compensatory relief from punitive relief and, on the other hand, the proposition that courts should not distinguish, for § 104(a)(2) purposes, among the kinds of injurious consequences flowing from a defendant's invasion of a plaintiff's tort-type right. *See, e.g., Rickel v. Commissioner,* 900 F.2d 655, 657–664 (3d Cir.1990) (damages for economic harm flowing from a tortious injury as equally excludable as damages for physical harm). The issue in the case before us is not whether certain kinds of compensation are excludable but whether punitive damages, which serve no compensatory function, are excludable. *See Rickel,* 900 F.2d at 661 n. 8, 666 n. 18 (emphasizing that question of excludability of punitive damages was not presented).

"the Supreme Court has upheld the retroactive application of revenue rulings on the grounds that the I.R.S. should not be estopped from correcting a 'mistake of law,' even though a taxpayer may have relied to his detriment on a prior agency ruling." *Becker*, 751 F.2d at 150 (citing *Dickman v. Commissioner*, 465 U.S. 330, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984) and *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957)). There is nothing about Miller's alleged detrimental reliance that distinguishes it from any other taxpayer's detrimental reliance. Hence, the retroactive change in the Commissioner's position here was permissible.

Finally, Miller has argued that the rule urged by the Commissioner creates complications because it requires separation of an unallocated settlement into a punitive damages portion and a compensatory damages portion. But allocations of the sort here involved are unexceptional. For example, allocation according to status *vel non* of damages flowing from tort-type claims as opposed to other claims must often take place.

### III

 Insofar as the Tax Court found unreasonable the Government's insistence that all of the $525,000 was to be included in income when, even before settlement, the gross amount of punitive damages only was quantified in the jury verdict as $450,000, it is understandable that the Tax Court held for Miller. By overreaching, the Government may have risked losing the whole case. It is appropriate for the case to be remanded to the Tax Court to permit a determination as to what portion of the $900,000 gross amount in settlement (reduced to $525,000 net) was attributable to punitive damages. Whatever else beyond that sum there was appeared in the guise of compensatory damages, and they are concededly not subject to tax in view of the language in § 104(a)(2) excluding damages received on account of personal injuries or sickness.

The question of allocation could be approached on remand by the Tax Court in a myriad of ways, only a few of which are here, for illustrative purposes, mentioned. One way would be to regard the reduction from the jury verdict of $950,000 to $900,000 as a lopping off of $50,000 in punitive damages. After allocating appropriate portions of the legal fees and other costs connected with the settlement (perhaps on a prorated basis), the amount of punitive damages (and, correspondingly, of compensatory damages) could be ascertained. Another approach might be to conclude that the $900,000/$950,000 ratio should be applied to the jury verdict, making the punitive damages portion of the settlement $426,315.78 and the compensatory damages portion $473,684.22. Settlement negotiations may have incurred a liability for attorney's fees and other costs on a pro rata basis, or some other method may have been employed. Those questions remain quintessentially appropriate for the Tax Court with perhaps some attention paid to an amicable settlement by the parties.

The case is reversed and remanded for treatment in accordance with this opinion.[9]

REVERSED AND REMANDED.

---

9. We have no occasion to treat the Government's assertion of an addition to tax under § 6661. We leave that issue, if the Government chooses to raise it, to the Tax Court on remand.