BONNIE A. MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent *
Miller v. Commissioner
Docket No. 21113-87
United States Tax Court
T.C. Memo 1993-49; 1993 Tax Ct. Memo LEXIS 52; 65 T.C.M. (CCH) 1884; February 9, 1993, Filed *52 Decision will be entered under Rule 155. For petitioner: S. Ronald Ellison. For respondent: Robert Williams. WELLS
WELLS
SUPPLEMENTAL MEMORANDUM OPINION WELLS, Judge: The instant case is before us on remand from the United States Court of Appeals for the Fourth Circuit. In our prior Opinion, 93 T.C. 330 (1989), revd. 914 F.2d 586 (4th Cir. 1990), we held that the net proceeds of the settlement of defamation actions brought by petitioner against her former employer, including proceeds attributable to punitive damage claims, were excludable from petitioner's gross income under section 104(a). [1] On appeal, the Court of Appeals reversed our decision in the instant case as to the question of excludability of punitive damages. Because we excluded the entire net proceeds from petitioner's income, we did not reach the question of whether we should allocate the settlement proceeds between compensatory and punitive damages. Consequently, the Court of Appeals remanded the instant case for us to make such an allocation. Subsequent to the remand of the instant case and after the parties were given an opportunity to settle the allocation *53 issue, a hearing was held at which the parties offered evidence on the allocation issue. After the hearing, we ordered the parties to submit supplemental briefs. Before turning to the allocation issue, we note that in another opinion of this Court released this date, Horton v. Commissioner, 100 T.C.     (1993) (Court reviewed), the Court revisited the issue of whether punitive damages received as a result of personal injury are excludable under section 104(a)(2). Citing the Supreme Court's recent opinion in United States v. Burke, 504 U.S.    , 112 S. Ct. 1867 (1992), we adhered to our prior holding in the instant case stating: After careful consideration of the views of the Fourth Circuit, we reaffirm our holding in Miller that punitive damages received as a result of a personal injury claim are excludable *54 under section 104(a)(2). The beginning and end of the inquiry should be whether the damages were paid on account of "personal injuries". This inquiry is answered by determining the nature of the underlying claim. Once the nature of the underlying claim is established as one for personal injury, any damages received on account of that claim, including punitive damages, are excludable. [Horton v. Commissioner, supra at     (slip op. at 6-7); fn. ref. omitted.]
Nonetheless, because the instant case was remanded to us solely for the purpose of making an allocation between punitive and compensatory damages, we have no jurisdiction in the instant case to revisit the issue of whether punitive damages are excludable under section 104(a)(2). Any reconsideration of that issue in the instant case is solely within the province of the Court of Appeals. Hence, our decision will be confined solely to the allocation issue. For convenience, we combine our findings of fact and opinion. In this Memorandum Opinion, we incorporate by reference the parties' stipulations of fact, which were set out in our prior Opinion, but we will discuss only the findings of fact pertinent to the *55 allocation issue. We also set forth and discuss in this Memorandum Opinion supplemental findings of fact arising out of the hearing on remand. On or about March 28, 1979, petitioner commenced a civil action (the first action) against four defendants in the Superior Court of (now the Circuit Court for) Baltimore City. The first action sought compensatory damages in the amount of $ 10 million and punitive damages in the amount of $ 10 million. On or about November 30, 1982, petitioner filed a second civil action (the second action) against eight defendants, two of whom were also defendants in the first action, in the Circuit Court for Baltimore County. In the second action, petitioner sought compensatory damages in the amount of $ 15 million and punitive damages in the amount of $ 15 million. The first action was tried and a verdict was returned in favor of petitioner for $ 500,000 in compensatory damages and $ 450,000 in punitive damages. The second action was never tried. On November 22, 1983, petitioner signed a release settling both the first action and the second action for a total of $ 900,000. The release did not allocate the settlement payment between compensatory and *56 punitive damages, and no allocation was made between the first action and the second action. In the notice of deficiency, respondent determined that the net proceeds of the settlement, after deducting petitioner's legal fees and expenses in the amount of $ 375,000, were taxable as ordinary income. Our task in the instant case is to decide what portion of the proceeds that petitioner received in the settlement of the two actions should be allocated to punitive damages. Because settlements often do not recite the manner in which the proceeds are to be allocated, the courts frequently have been confronted with such task. The allocation of settlement payments is a question of fact. Knuckles v. Commissioner, 349 F.2d 610, 612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Seay v. Commissioner, 58 T.C. 32, 37 (1972). Petitioner bears the burden of proving that respondent's allocation is erroneous. Rule 142(a); Fisher Cos. v. Commissioner, 84 T.C. 1319, 1339 (1985), affd. without published opinion 806 F.2d 263 (9th Cir. 1986); Bresler v. Commissioner, 65 T.C. 182, 188 (1975). *57 Payments in settlement of litigation are characterized for tax purposes by reference to the origin and nature of the claim that was the actual basis for settlement. United States v. Gilmore, 372 U.S. 39 (1963); Bent v. Commissioner, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987). Characterization of a claim depends upon its nature. United States v. Burke, 504 U.S. at    , 112 S. Ct. at 1872. It does not depend upon the validity of the claim. Bent v. Commissioner, supra at 244. Factors to be considered in making the allocation include the allegations contained in the complaint, the defenses asserted, the background of the litigation, and other facts pertinent to the controversy giving rise to the settlement. See Estate of Morgan v. Commissioner, 332 F.2d 144, 151 (5th Cir. 1964), affg. in part and revg. in part 37 T.C. 31 (1961); Bent v. Commissioner, supra at 245; Rafter v. Commissioner, 60 T.C. 1, 8 (1973), affd. *58 without published opinion 489 F.2d 752 (2d Cir. 1974); Boagni v. Commissioner, 59 T.C. 708, 713 (1973). A critical factor to be considered in making an allocation of settlement payments is "the intent of the payor." Knuckles v. Commissioner, supra at 613; see also Bent v. Commissioner, supra at 244, and cases cited therein. The Court of Appeals, in remanding the allocation issue to this Court, gave the following guidance: The question of allocation could be approached on remand by the Tax Court in a myriad of ways, only a few of which are here, for illustrative purposes, mentioned. One way would be to regard the reduction from the jury verdict of $ 950,000 to $ 900,000 as a lopping off of $ 50,000 in punitive damages. After allocating appropriate portions of the legal fees and other costs connected with the settlement (perhaps on a prorated basis), the amount of punitive damages (and, correspondingly, of compensatory damages) could be ascertained. Another approach might be to conclude that the $ 900,000/$ 950,000 ratio should be applied to the jury *59 verdict, making the punitive damages portion of the settlement $ 426,315.78 and the compensatory damages portion $ 473,684.22. Settlement negotiations may have incurred a liability for attorney's fees and other costs on a pro rata basis, or some other method may have been employed. Those questions remain quintessentially appropriate for the Tax Court with perhaps some attention paid to an amicable settlement by the parties. [Miller v. Commissioner, 914 F.2d at 592.]
We note at the outset that respondent does not request that we allocate the gross settlement proceeds of $ 900,000 by prorating the attorney's fees and costs, as suggested by the Court of Appeals. Indeed, as noted above and in our prior Opinion, Miller v. Commissioner, 93 T.C. at 334 n.2, respondent allowed a deduction for such fees and costs in the notice of deficiency. Accordingly, in the instant case, respondent only contends that we should allocate net proceeds of $ 525,000. Consequently, we limit our consideration in the instant case to an allocation of only the net proceeds of $ 525,000. But see Bent v. Commissioner, supra at 251. *60 Petitioner contends that the proper method of allocating between compensatory and punitive damages is to allocate all of the net proceeds of the settlement between the first action and second action and then within each action allocate such amounts between punitive and compensatory damages. Based on the testimony of petitioner's attorney who represented her in the first and second action, petitioner contends that one-third of the net proceeds should be allocated to the first action and two-thirds should be allocated to the second action. Petitioner further contends that the portion of the proceeds allocated to the second action should be viewed as entirely compensatory and, of the one-third of the proceeds petitioners contends is allocable to the first action, that one-half of such amount (or 16-2/3 percent of the total) should be allocated to punitive damages. Respondent contends that we should allocate the net proceeds on the basis of the ratio inherent in the jury's verdict in the first action. In the first action, as the jury awarded $ 450,000 in punitive damages and $ 500,000 compensatory damages, respondent contends that 47.36842 percent of the net proceeds should be allocated *61 to punitive damages. Alternatively, respondent contends that we should allocate the net proceeds equally between compensatory and punitive damages because the pleadings in the first and second actions ask for equal amounts of compensatory and punitive damages. As stated above, the intent of the defendants in making the settlement payment to petitioner is a critical factor to be considered. Knuckles v. Commissioner, supra. The record, however, is devoid of any direct evidence of the defendants' intent. Accordingly, we must rely on indirect evidence to establish how much the defendants intended to pay to petitioner in consideration of her release of punitive damage claims. Indeed, it is likely that in most settlements defendants would not wish to characterize any portion of damages as punitive because they would be admitting to egregious conduct. See Miller v. Commissioner, 93 T.C. at 343 (Ruwe, J., concurring). What we know for certain is that the defendants intended to extinguish all of petitioner's claims, including petitioner's claim to punitive damages, as evidenced by the language of the release. Petitioner *62 bases her contended allocation on the testimony of Patrick A. O'Doherty, the attorney who represented her in the first and second actions. He testified that the first action involved the element of public outrage because of alleged "frauds against the U.S. Government and paying off of witnesses." Accordingly, he assessed the first action as having the greater punitive damage recovery potential. Mr. O'Doherty, however, thought that the most appealing case overall as far as potential total recovery was the second action. He testified as follows: So that -- and it was the most appealing case, the compensatory case, because it involved her potential -- I mean, the outrage that was committed against her, were calling her a thief and that she was having sexual intercourse with people, and the people she was having sexual intercourse with were employees of the company and they were then cheating the company, as well. So that all the appeal there, all of the element of damage there was recoverable under compensatory damages.
If it would make any difference in our overall allocation of the settlement payment, we might agree with petitioner that it would be appropriate to allocate *63 the net proceeds between the first action and the second action before allocating between the two types of damages. We need not make such an allocation, however, because we reject petitioner's assertion that there should be no allocation to punitive damages in the second action. The objective evidence shows that punitive damages were in issue in the second action. Petitioner's complaint in the second action claimed punitive damages in an amount equal to that of petitioner's claim for compensatory damages. We think that the subjective assessment of petitioner's attorney that petitioner's punitive damage claim in the second action was not as strong as it was in the first action ignores the requirement that we must look to the nature of the claim, rather than its validity. Bent v. Commissioner, supra.The record does not contain evidence of negotiations leading to the settlement between petitioner and the defendants. Moreover, petitioner's attorney testified that, when he assessed the case for settlement purposes, he did not find it necessary to allocate between the two actions and that, because he thought all of the damages, whether punitive *64 or compensatory, were tax free, he did not find it necessary to allocate between such damages in either action. Consequently, we find the subjective assessment of petitioner's attorney less persuasive than the objective evidence contained in the record. The objective evidence in the record consists of the complaints in the first and second actions, which make equal claims for punitive and compensatory damages in both actions, and the jury verdict in the first action, which awarded petitioner $ 450,000 in punitive damages and $ 500,000 in compensatory damages. Respondent contends that the allocation should be based on the jury award, as it provides the best indication of the defendants' intent. We agree with respondent. While none of the proffered methods of allocation is perfect, we think that the jury award provides the clearest indication of the nature of petitioner's claim and the intent of the defendants when they made the settlement payment to petitioner. Although we are unable to predict with any certainty whether a similar award would have been made in the second action, the second action did make a claim for punitive damages. We also note that the settlement provided *65 for a payment of $ 900,000 to petitioner in settlement of both actions even though the jury had already awarded a total of $ 950,000 in compensatory and punitive damages to petitioner in the first action. As between compensatory and punitive damages, we decline to speculate what the $ 50,000 reduction represents. In short, we are satisfied that the jury award is a reasonable indicator of how the proceeds should be allocated. As indicated above, since punitive damages were 47.36842 percent of the total jury award, we allocate $ 248,684.20 to punitive damages. To reflect the foregoing and respondent's concession of the addition to tax under section 6661, Decision will be entered under Rule 155. Footnotes
*. This is a supplement to our opinion in Miller v. Commissioner↩, 93 T.C. 330 (1989), revd. 914 F.2d 586 (4th Cir. 1990).
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩