**Rudolph F. ADLER; Jacquelyn L. Adler, Petitioners–Appellants,**

v.

**COMMISSIONER OF the INTERNAL REVENUE SERVICE, Respondent–Appellee.**

No. 95–2348.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1996.

Decided June 21, 1996.

**ARGUED:** Alan Steven Zipp, Rockville, Maryland, for Appellants. William J. Patton, Tax Division, United States Department of Justice, Washington, DC, for Appellee. **ON BRIEF:** Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Richard Farber, Tax Division, United States Department of Justice, Washington, DC, for Appellee.

Before ERVIN and WILKINS, Circuit Judges, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.

Vacated and remanded by published opinion. Judge WILKINS wrote the opinion, in which Judge ERVIN and Judge NORTON joined.

## OPINION

WILKINS, Circuit Judge:

Rudolph F. Adler appeals a decision of the United States Tax Court upholding a determination by the Commissioner of Internal Revenue that a distribution he received in 1990 from the Maryland Employees' Retirement System should have been reported as taxable income for that year.[1] Because we conclude that the Tax Court erred in holding that the distribution was not made "on account of the employee's separation from the service" within the meaning of 26 U.S.C.A. § 402(e)(4)(A)(iii) (West 1988), we vacate and remand for further proceedings consistent with this opinion.

### I.

Maryland created the Retirement System in 1941 to provide retirement benefits to state employees. After actuarial projections made in the late 1970s indicated that the Retirement System was underfunded, it was closed to new participants effective January 1, 1980, and the Maryland Employees' Pension System was created. Although no longer accepting new members, the Retirement System was maintained in effect for all participants who had entered into service prior to 1980. Pursuant to state pension reform legislation in 1984, participants in the Retirement System were offered several options relating to their retirement benefits, one of which was the right to transfer to the Pension System. Under state law, if a Retirement System member chose to transfer to the Pension System, that person would receive a distribution of employer and employee contributions that had been made to the Retirement System plus the earnings on those contributions (the Transfer Refund). The employee's service credits, salary level, and other informational data then would be used to compute the monthly retirement benefit payable under the Pension System. This monthly benefit, however, was significantly less than the amount the employee would have received if the employee had retired as a member of the Retirement System. Although not obligated to retire in order to elect to transfer, a participant in the Retirement System forfeited the right to obtain the Transfer Refund and to retire under the Pension System if the election was not made prior to retirement.

Adler, who began state employment in 1965, participated in the Retirement System. On May 24, 1990, in preparation for his impending retirement, he submitted an application to transfer to the Pension System. On that same day, Alder applied for retirement under the Pension System, effective July 1, 1990. Soon afterward, he received a Transfer Refund totalling $169,352.98 and within 60 days deposited $143,705.04 into an individual retirement account (IRA). On his income tax return for 1990, Adler reported no part of the Transfer Refund as taxable income. As a result of a subsequent audit, the Commissioner determined that $144,165 of the Transfer Refund—the amount by which the distribution exceeded Adler's previously-taxed employee contributions—should have been reported as taxable income for that year. *See* 26 U.S.C.A. § 402(a)(1) (West 1988). In addition, the Commissioner determined that Adler was liable for the excise tax imposed on excess contributions to an IRA.

---

**1.** His wife, Jacquelyn L. Adler, is also a party because the Adlers filed a joint tax return for 1990.

*See* 26 U.S.C.A. § 4973 (West 1989). He assessed Adler's total tax deficiency for 1990 to be $54,356.99 plus interest. The United States Tax Court upheld the Commissioner's determination,[2] and Adler appeals.

## II.

■ Under the version of the Internal Revenue Code in effect in 1990, distributions from qualified retirement plans were, as a general rule, taxable to the beneficiary in the year of receipt. *See* 26 U.S.C.A. § 402(a)(1). Some distributions from qualified plans, however, were entitled to more favorable tax treatment. Of relevance to our decision, a partial distribution was eligible for rollover treatment, *i.e.*, the distribution would "not be includ[ed] in gross income for the taxable year in which paid," if (1) the distribution was made payable to the employee "on account of the employee's separation from the service;" (2) the employee transferred the distribution to an IRA; and (3) the deposit was made within 60 days of receipt. 26 U.S.C.A. § 402(a)(5), (e)(4)(A)(iii) (West 1988). Because the parties agree that the Transfer Refund is a partial distribution from a qualified plan, that Adler made his deposit to an IRA within 60 days of receiving the payment, and that his retirement qualifies as a "separation from the service," the sole issue on appeal is whether the Tax Court properly determined that the distribution was not made to Adler "on account of" his retirement.[3] We review de novo determinations of law made by the Tax Court. *See Estate of Waters v. Commissioner*, 48 F.3d 838, 841–42 (4th Cir.1995).

## III.

■ The phrase "on account of" is not defined in the Internal Revenue Code or in the accompanying regulations. Obviously, the phrase requires that there be a causal connection between the employee's separation from service and the distribution from the qualified plan. *See Commissioner v. Miller*, 914 F.2d 586, 589 (4th Cir.1990). Merely because the phrase suggests some degree of causation, however, does not specify what level of causation is required; the phrase, therefore, is inherently ambiguous. *Id.* at 589–90; *see also O'Gilvie v. United States*, 66 F.3d 1550, 1556 (10th Cir.1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 1316, 134 L.Ed.2d 469 (1996); *Wesson v. United States*, 48 F.3d 894, 898 (5th Cir.1995); *Hawkins v. United States*, 30 F.3d 1077, 1080 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995); *Reese v. United States*, 24 F.3d 228, 230 (Fed.Cir. 1994). Indeed, the phrase has several possible meanings, including "incident to," *Gittens v. Commissioner*, 49 T.C. 419, 423, 1968 WL 1396 (1968), " 'by reason of,' " " 'because of,' " " 'as a result of, or as a consequence of,' " *Osterman v. Commissioner*, 50 T.C. 970, 974, 1968 WL 1455 (1968) (quoting *Funkhouser v. Commissioner*, 44 T.C. 178, 184, 1965 WL 1322 (1965), *aff'd,* 375 F.2d 1 (4th Cir.1967)). Accordingly, we conclude that although the plain language of § 402 mandates a causal link between the two events in order for the distribution to be eligible for rollover treatment, the degree of causation required is not specified in the statute.

■ The inherent ambiguity in the phrase "on account of" requires that we examine other sources to determine whether Congress intended that § 402 should be given the narrow interpretation advocated by the Government and adopted by the Tax Court, *i.e.*, that there be a direct causal link between the separation from service and the distribution, or whether some lesser causal relationship will satisfy the statutory language. This search requires an examination of the legislative history of the statute to determine its underlying purpose, recognizing that we best implement the intent of Congress by construing the statute in a way

---

**2.** The Tax Court did reduce the amount of the deficiency assessed by the Commissioner by $120 to reflect a miscalculation relating to the amount of the excise tax.

**3.** The requirement that this specific type of distribution be received "on account of" a separation from service before it would be eligible for rollover treatment was deleted by 1992 amendments to § 402. *See* Unemployment Compensation Amendments of 1992, Pub.L. No. 102–318, § 521(a), 106 Stat. 290, 300–10.

that gives effect to its purpose. *See O'Gilvie,* 66 F.3d at 1558. *See generally United States v. American Trucking Ass'n,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).

The legislative history of this provision indicates that the congressional purpose was to confer favorable tax treatment on a distribution if it was received when the employee retired or otherwise separated from service. *See* S.Rep. No. 1631, 77th Cong., 2d Sess. 138 (1942); *see also Smith v. United States,* 460 F.2d 1005, 1007 (6th Cir.1972); *United States v. Johnson,* 331 F.2d 943, 945 (5th Cir.1964). Moreover, Congress intended that such treatment be unavailable for distributions that were not received in connection with a true separation from service because preretirement distributions could result in the depletion of an employee's retirement savings, a result it sought to discourage. *See Burton v. Commissioner,* 99 T.C. 622, 632, 1992 WL 370601 (1992); *Reinhardt v. Commissioner,* 85 T.C. 511, 525, 1985 WL 15395 (1985).

As the purpose of the statute is to protect and encourage retirement savings, it is plain that a distribution to an employee that occurs incident to his retirement should be entitled to rollover treatment. Applying this standard, we conclude that the Transfer Refund was a partial distribution made to Adler "on account of" his retirement and, therefore, was eligible for rollover treatment under § 402 as it existed in 1990. Furthermore, in order to exercise his legal right to retire under the Pension System, Adler was required to make the election to transfer from the Retirement System prior to his retirement. If he had failed to so elect, he would have relinquished forever his right to retire under the Pension System. Thus, although Adler's retirement and the distribution were not causally connected in the sense that Adler's legal right to the distribution was triggered by his retirement, Adler's retirement clearly resulted in the election. Consequently, the resulting distribution occurred on account of Adler's retirement.

Finally, we note that to sanction the interpretation of the phrase "on account of" adopted by the Tax Court and its result—that the Transfer Refund received by Adler was not eligible for rollover treatment—would not further the goal Congress sought to advance by enacting the legislation itself. Allowing Adler to deposit the taxable portion of the distribution into an IRA does not infringe upon this goal because he did not receive an early, preretirement distribution. Moreover, if denied favorable tax treatment in this situation, Adler will face retirement without a large portion of his retirement savings, thus creating the very situation that Congress sought to avoid by adding the limitation in the first place.[4]

## IV.

In conclusion, we hold that the distribution Adler received from the Retirement System was made payable to him "on account of" his retirement. Accordingly, it was eligible for rollover treatment under the version of § 402 in effect in 1990. The decision of the Tax Court is vacated and remanded for further proceedings consistent with this opinion.[5]

*VACATED AND REMANDED.*

---

4. We also note that this is not a situation in which the taxpayer seeks to avoid the taxation of a distribution. Adler will pay income tax on payments from his IRA as each payment is received. *See* 26 U.S.C.A. §§ 72, 408(d) (West Supp.1996).

5. The record before us indicates that Adler did not deposit the entire previously-untaxed portion of the Transfer Refund into the IRA. And, only that part of the distribution that he transferred to the IRA is eligible for rollover treatment. *See* 26 U.S.C.A. § 402(a)(5)(A). Because the record is unclear concerning the tax treatment to be accorded the remaining amount, we remand for further proceedings consistent with this opinion.