RICHARD N. GUNNISON AND VIVIAN E. GUNNISON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6367–65. Filed September 30, 1970.

*John Blyer Callahan*, for the petitioners.
*James F. Hanley, Jr.*, for the respondent.

1768

OPINION

Richard received distributions from two employee trusts which were qualified employee trusts under section 401(a). Respondent argues that the amounts which he received from each trust are taxable as

ordinary income under section 402(a)(1),[2] and do not qualify for capital gains treatment under section 402(a)(2), which, in part, states:

(2) CAPITAL GAINS TREATMENT FOR CERTAIN DISTRIBUTIONS.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the *total distributions payable with respect to any employee* are paid to the distributee within 1 taxable year of the distributee *on account of the employee's death* or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribution, * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. [Emphasis supplied.]

Respondent argues that Richard did not receive the payments from either trust on account of an employee's death, but rather on account of the death of the primary beneficiary-distributee, his mother. Respondent concludes that the section 402(a)(2) requirement that the payments be received "on account of the employee's death" is not met and that the section is therefore inapplicable.

Respondent also argues that the term "total distributions payable," as defined in section 402(a)(3)(C)[3] means the total amount in the employee's account at the time of death, separation from service, or death after separation from the service, and that this amount must be distributed within the same taxable year of all distributees in order for the recipient to be entitled to capital gains treatment. He cites section 1.402(a)-1(a)(6)(iv), Income Tax Regs., in support thereof, which states:

Sec. 1.402(a)-1 Taxability of beneficiary under a trust which meets the requirements of section 401(a).

(a) In general. * * *

(6)(iv) [If the "total distributions payable" are paid or includible in the gross income of several distributees within one taxable year on account of the employee's death or other separation from the service or on account of his death after separation from the service, the capital gains treatment is applicable.

---

[2] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

(a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

(1) GENERAL RULE.—Except as provided in paragraphs (2) and (4), the amount actually distributed or made available to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities) * * *

[3] (C) The term "total distributions payable" means the balance to the credit of an employee which becomes payable to a distributee on account of the employee's death or other separation from the service, or on account of his death after separation from the service.

See also the language in H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. A–147 (1954), wherein it is stated:

"The term 'total distribution payable' is defined as the balance to the credit of an employee which becomes payable to a distributee by reason of occurrence of the specified events, so that partial distributions made prior to occurrence of the specified events will not defeat application of the capital gains treatment."

\* \* \* However, if the share of any distributee is not paid or includible in his gross income within the same taxable year in which the shares of the other distributees are paid or includible in their gross income, none of the distributees is entitled to the capital gains treatment, since the total distributions payable are not paid or includible in the distributees' gross income within one taxable year.

Since the sums in the profit-sharing trust were not distributed within 1 taxable year to all distributees (namely, Josephine, Richard, and Junior), respondent concludes that capital gains treatment is precluded by this regulation.

Petitioners argue that the amounts received by Richard do qualify for capital gains treatment under section 402(a)(2) because "total distributions payable," as defined in section 402(a)(3)(C), means the amount to which each distributee is entitled, rather than the total amount in the account of the employee as of the time of the employee's death. They contend that Richard received the amounts to which he was entitled upon his mother's death and within 1 taxable year; and that under section 402(a)(2) said "total distribution" was paid "on account of the employee's death," because, *but for Walter's death* Richard would not have received the sums.

As regards the applicability of regulations section 1.402(a)–1(a) (6)(iv), *supra*, to the distributions from the profit-sharing trust, petitioners contend that the regulations must be construed to separately apply only to one class of beneficiary-distributees at a time; primary or secondary, but not to both. They conclude that even though other primary beneficiaries would not have been eligible for capital gains treatments once Josephine received nonqualifying distributions, that secondary beneficiaries, being in a separate class, might still qualify.

Alternatively, petitioners argue that the regulation is invalid because the statute, properly construed, requires us to treat each distributee separately, irrespective of how amounts are paid to other distributees.

We need not and do not decide the issues concerning the definition of "total distributions" and the applicability or invalidity of section 1.402(a)–1(6)(iv), Income Tax Regs., since in our view, Richard did not receive his distributions from either trust "on account of the employee's death."

We construe the statute to require that the payment or payments to the distributee be made solely because of the occurrence of one of the three specified events (the employee's death, separation from service, or death after such separation). Since Richard received the distributions not solely because his father had died, but also because his mother, the primary beneficiary-distributee, had died without hav-

ing received the entire amount of the funds, section 402(a)(2) is inapplicable.

The interpretation of the phrase "on account of" was considered in *Janet H. Gordon*, 26 T.C. 763 (1956). In that case, an employee retired under the New York State Employees' Retirement System and elected to take his retirement benefits under an option which provided that if he died before receiving annuity payments equal to the value of the annuity at the time of his retirement, the balance of his annuity was to be paid to his estate or a designated beneficiary. When he died, the remaining balance of the annuity was distributed in lump sum to his daughter. The Court held that under section 165(b) of the Internal Revenue Code of 1939 [4] (hereinafter sometimes referred to as section 165(b)), the predecessor to section 402(a)(2), the lump sum was not eligible for capital gains treatment since it was not received by the daughter on account of the father's separation from the service but rather on account of his death after separation from the service. In so holding the Court adopted a literal interpretation of "on account of the employee's separation from the service," i.e., that that had to be the sole event that triggered the receipt of the money by the distributee. See also *Estate of Frank B. Fry*, 19 T.C. 461, affirmed per curiam 205 F. 2d 517 (C.A. 3, 1953) ; *Edward Joseph Glinske, Jr.*, 17 T.C. 562 (1951).

While Congress, in enacting section 402(a)(2) in 1954, broadened the scope of section 165(b) to include capital gains treatment for amounts received "on account of the death of the employee after his separation from the service," it is clear that the interpretation placed on section 165(b) and the phrase "on account of" by this Court, is that intended by Congress.

As indicated in the report of the Committee on Ways and Means of the U.S. House of Representatives, H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 43 (1954), the addition to section 402(a)(2) was an extension of the statute, not a clarification of confused or obfuscated language. This report states:

Under present law, lump-sum distributions paid under qualified trusteed plans because of separation from service are treated as long-term capital gains. However, similar distributions from insured plans are taxed as ordinary income. Moreover, regardless of the type of plan, lump-sum distributions to beneficiaries

---

[4] (b) TAXABILITY OF BENEFICIARY.—The amount actually distributed or made available to any distributee by any such trust shall be taxable to him, in the year in which so distributed or made available, under section 22(b)(2) as if it were an annuity the consideration for which is the amount contributed by the employee, except that if the total distributions payable with respect to any employee are paid to the distributee within one taxable year of the distributee on account of the employee's separation from the service, the amount of such distribution to the extent exceeding the amounts contributed by the employee, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months.

of covered individuals who die after terminating their employment are not entitled to capital gains treatment. This has resulted in considerable inequities and hardship. To grant equal tax treatment, your committee's bill provides long-term capital gains treatment for lump-sum distributions from both trusteed and insured plans if they are qualified, which are made either because of separation from service or because of the death of the covered individual after retirement.

The above legislative comment indicates that our literal interpretation of "on account of" is proper, and that the specified event, and that event alone, must precipitate the distribution in order for it to qualify under section 402(a). Likewise, a comment with regard to an interpretation of "total distributions payable" confirms this interpretation. In the report of the Committee on Finance of the U.S. Senate, S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 290 (1954), it is stated that amounts must become payable to the distributee "by reason of occurrence of the specified events."

There is no indication whatsoever in the legislative history that "on account of the employee's death" is to be given a broad interpretation to extend it to the death of the initial beneficiary, or that "on account of" is to be interpreted differently with regard to different specified events. Should this phrase be interpreted as requiring the event to be a mere link in a chain of causalities, the coverage of the statute would be widely extended. We can find no foundation for this in the history, in the statutory wording, or the case law.

We find and hold for respondent that the payments were not received "on account of" Walter's death. Accordingly, they are taxable as ordinary income under section 402(a)(1) and section 72. Because of a concession,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

---

SCOTT, *J.*, concurring: I agree with the result reached by the majority but do not agree with the basis on which this result is reached. In my view, respondent's regulation requiring that in order to obtain capital gain treatment, the distribution, where made to more than one distributee, must be paid to or be includable in the gross income of all distributees within the same taxable year (sec. 1.402(a)–1(a)(6)(iv), Income Tax Regs.) is a reasonable interpretation of the statute. The distributions from one of the funds involved in this case were made in 2 separate taxable years, since Josephine, the widow, received one distribution in 1959 and one in 1960 and the balance was distributed to petitioner Richard and his brother in 1960. The evidence is not sufficient to show that the distributions from the other fund were not made in 2 separate taxable years in that it is not clear that the widow did not receive a distribution from this fund in 1959. The record shows

that the balance of the second fund was distributed to Richard and his brother in 1960. I would hold that respondent's regulation is valid and that under that regulation petitioners are not entitled to capital gain treatment of the distributions Richard received, since the distributions were not paid to or includable in the gross income of all distributees within the same taxable year.