RUDOLPH F. AND JACQUELYN L. ADLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adler v. Commissioner
Docket No. 3962-94
United States Tax Court
T.C. Memo 1995-148; 1995 Tax Ct. Memo LEXIS 141; 69 T.C.M. (CCH) 2314; April 4, 1995, Filed *141 Decision will be entered for respondent for the deficiency in income tax as determined in the notice of deficiency and for respondent for the deficiency in excise tax in the reduced amount. For petitioners: Richard B. Treanor. For respondent: Alan R. Peregoy. DAWSON, ARMEN
DAWSON; ARMEN
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE ARMEN, Special Trial Judge: For the taxable year 1990, respondent determined a deficiency in petitioners' Federal income tax, as well as *142 a deficiency in excise tax under section 4973, in the total amount of $ 54,356.99. [2]
The only issue for decision is whether the distribution (the Transfer Refund) received by petitioner Rudolph F. Adler from the Employees' Retirement System of the State of Maryland was paid "on account of the employee's separation from the service" under section 402(e)(4)(A)(iii) so that it would qualify as a partial distribution eligible for rollover treatment under section 402(a)(5)(D). The parties agree that if we hold that the Transfer Refund was paid "on account of the employee's separation from the service", then petitioners will not be liable for the deficiencies that respondent determined. Similarly, the parties agree that *143 if we hold that the Transfer Refund was not paid "on account of the employee's separation from the service", then petitioners will be liable for the deficiencies that respondent has determined. FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. Petitioners resided in Lanham, Maryland, at the time their petition was filed with the Court. Petitioner Rudolph F. Adler (petitioner) was an employee of the State of Maryland, Department of the Environment, from 1965 until his retirement, which became effective on July 1, 1990. [3] On May 24, 1990, petitioner applied to transfer from the Employees' Retirement System of the State of Maryland (the Retirement System) to the Employees' Pension System of the State of Maryland (the Pension System). [4] On the same day, petitioner applied to retire from employment with the State under the Pension System, effective July 1, 1990. *144 Petitioner was a member of the Retirement System [5] until his election to transfer from the Retirement System to the Pension System became effective on June 1, 1990. Petitioner received the Transfer Refund in the amount of $ 169,352.98 in the form of three checks dated June 29, 1990 (for $ 164,643.88), August 31, 1990 (for $ 426.20), and September 13, 1990 (for $ 4,282.90). The Transfer Refund consisted of $ 25,186.34 in previously taxed contributions *145 made by petitioner during his employment tenure with the State, $ 139,457.54 of earnings, and $ 4,709.10 of employer "pick-up contributions". The Transfer Refund represented more than 50 percent of petitioner's balance to the credit in the Retirement System for purposes of section 402(e)(4)(A). The earnings and "pick-up contributions", which total $ 144,166.64 and equal approximately 85 percent of the Transfer Refund, constitute the taxable portion of the Transfer Refund. On August 22, 1990, less than 60 days after receiving the Transfer Refund, petitioner deposited $ 143,705.04 of the Transfer Refund into an individual retirement account (the IRA). This amount remained in the IRA throughout the remainder of 1990. When petitioner transferred from the Retirement System to the Pension System, he had attained the age of 60. If petitioner had not transferred from the Retirement System to the Pension System but had remained a member of the Retirement System, he would have been entitled to retire and receive a normal service retirement benefit, including a regular monthly annuity. He would not have been entitled to receive the Transfer Refund because the Transfer Refund was payable *146 only as a result of the election to transfer from the Retirement System to the Pension System. Md. Ann. Code art. 73B, secs. 11B(5), 14(1)(g) (1988). As a result of his election to transfer from the Retirement System to the Pension System, petitioner became, and presently is, a member of the Pension System. As a member of the Pension System, petitioner receives a retirement benefit based upon his salary and his creditable years of service, specifically including those years of creditable service recognized under the Retirement System. However, because petitioner received the Transfer Refund, his monthly annuity is less than the monthly annuity he would have received if he had not transferred to the Pension System but had retired under the Retirement System. On their income tax return for 1990, petitioners reported that no part of the Transfer Refund was taxable during that year. In the notice of deficiency, respondent determined that $ 144,165 of the Transfer Refund (the amount by which the Transfer Refund exceeded petitioner's previously taxed contributions) was currently taxable to petitioners and that such amount was subject to the excise tax imposed on excess contributions *147 to an IRA under section 4973. [6]
OPINION Petitioners contend that the Transfer Refund received by petitioner from the Retirement System was paid "on account of * * * [petitioner's] separation from the service" within the meaning of section 402(e)(4)(A)(iii). Respondent contends to the contrary. The parties agree that our resolution of this matter will dictate whether or not the Transfer Refund qualifies as a partial distribution eligible for rollover treatment under section 402(a)(5)(D) and consequently whether or not petitioners are liable for the deficiencies that respondent determined. A "partial distribution" is defined as "any distribution to an employee of all or any portion of the balance to the credit of such employee in *148 a qualified trust; except that such term shall not include any distribution which is a qualified total distribution". Sec. 402(a)(5)(E)(v). The parties agree that the Transfer Refund was not a qualified total distribution. In order to be eligible for tax-free rollover treatment, the "partial distribution" must be "payable as provided in clause (i), (iii), or (iv) of subsection (e)(4)(A) (without regard to the second sentence thereof)". Sec. 402(a)(5)(D)(i)(I). As relevant herein, section 402(e)(4)(A) provides that a distribution must be made either "(i) on account of the employee's death", "(iii) on account of the employee's separation from the service", or "(iv) after the employee has become disabled". Petitioners do not contend that the Transfer Refund was received either on account of petitioner's death or after any disability. Therefore, our analysis is limited to section 402(e)(4)(A)(iii); i.e., the requirement that the distribution be made "on account of the employee's separation from the service". The phrase "on account of" is not defined in either the Internal Revenue Code or in the accompanying regulations.[7] *150 See Burton v. Commissioner, 99 T.C. 622, 626 (1992). *149 The burden of proving that the Transfer Refund was received "on account of" petitioner's separation from the service is on petitioners. Rule 142(a); Burton v. Commissioner, supra at 632; Sarmir v. Commissioner, 66 T.C. 82, 88 (1976). This burden is particularly heavy because we have recently held, in a case involving virtually identical facts and circumstances, that a taxpayer's receipt of a distribution from the Maryland State Teachers' Retirement System (the Teachers' Retirement System) upon transferring to the Maryland State Teachers' Pension System (the Teachers' Pension System) was not received on account of his retirement but rather on account of the transfer from the Teachers' Retirement System to the Teachers' Pension System. Hylton v. Commissioner, T.C. Memo. 1995-27. [8] Accord Dorsey v. Commissioner, T.C. Memo. 1995-97. Petitioners' principal contentions (the only contentions that warrant discussion) are that: (1) The Court's decision in Hylton v. Commissioner, supra, was *151 incorrect; and (2) the facts in this case are distinguishable from those in Hylton v. Commissioner, supra, because petitioner's election to retire from employment with the State and to transfer from the Retirement System to the Pension System were made on the same day, and he did not continue working after receiving the Transfer Refund. With regard to petitioners' first contention, petitioners mischaracterize our holding in Hylton v. Commissioner, supra. We did not hold, as suggested by petitioners, that a distribution must be solely "on account of the employee's separation from the service" in order to satisfy the requirements of section 402(e)(4)(A)(iii). Rather, we held that the distribution from the Teachers' Retirement System to the taxpayer did not satisfy the requirements of section 402(e)(4)(A)(iii) because it was not made "on account of * * * [the taxpayer's] separation from the service" but rather on account of the taxpayer's election to transfer from the Teachers' Retirement System to the Teachers' Pension System.[9]
*152 Petitioners' second contention is similarly without merit. In Hylton v. Commissioner, supra, we found that the taxpayers had shown that the taxpayer's election to transfer from the Teachers' Retirement System to the Teachers' Pension System was related to his retirement planning and that he had in fact retired within 6 months of receiving the distribution which accompanied his transfer to the Teachers' Pension System. Similarly, in this case, we are satisfied that petitioners have shown that petitioner's election to transfer from the Retirement System to the Pension System was related to his retirement planning. However, neither the fact that petitioner's election to transfer and petitioner's election to retire were made on the same day, nor the fact the petitioner did not continue working after receiving the Transfer Refund, alters the fact that the Transfer Refund was made on account of petitioner's election to transfer from the Retirement System to the Pension System. Absent that election, no such distribution would have been made. [10]
*153 As we discussed in Hylton v. Commissioner, supra, there is no direct causal link under Maryland law between a taxpayer's election to transfer from the Retirement System to the Pension System and a taxpayer's election to retire. Similarly, under Maryland law, there is no direct causal link between the receipt of the Transfer Refund and a taxpayer's retirement. No such causal link exists because a taxpayer is not obliged, under Maryland law, to transfer from the Retirement System to the Pension System either in order to continue working or in order to retire. Similarly, under Maryland law, a taxpayer is not obliged to retire upon electing to transfer from the Retirement System to the Pension System. In other words, petitioner could have transferred from the Retirement System to the Pension System and received the Transfer Refund at any time during his employment tenure with the State; he was under no obligation whatsoever to retire solely by virtue of having transferred from the Retirement System to the Pension System. Upon electing to transfer from the Retirement System to the Pension System and receiving the Transfer Refund, petitioner was *154 at liberty to dispose of the Transfer Refund as he saw fit. In other words, Maryland law did not prescribe or otherwise limit the options available to petitioner in disposing of the Transfer Refund. Hylton v. Commissioner, supra.[11]
Petitioners offer no compelling reason for us to depart from either our analysis or conclusion in Hylton v. Commissioner, supra. Therefore, we hold that petitioner did not receive the Transfer Refund "on account of * * * [petitioner's] separation from the service". Rather, we hold that petitioner received the Transfer Refund on account of his election to transfer from the Retirement System to the Pension System, an *155 election that, under Maryland law, lacked the requisite connection to petitioner's separation from the service. Having concluded that the Transfer Refund was not eligible for tax-free rollover treatment under section 402(a)(5) as a "partial distribution", we sustain respondent's income tax and excise tax determinations for the year in issue (with the reduction indicated supra note 6). In order to give effect to the foregoing, Decision will be entered for respondent for the deficiency in income tax as determined in the notice of deficiency and for respondent for the deficiency in excise tax in the reduced amount. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 4973 imposes a 6-percent excise tax on excess contributions to individual retirement accounts. This tax is included within ch. 43 of the Internal Revenue Code and is therefore subject to the deficiency procedures set forth in subch. B of ch. 63 of the Internal Revenue Code. See sec. 6211(a).↩
3. Petitioner's last day of actual work was Friday, June 29, 1990, and his last day in employment status was Saturday, June 30, 1990.↩
4. In 1979, the Maryland State legislature adopted legislation creating the Pension System and enabling participants in the Retirement System to transfer to the Pension System. See Md. Ann. Code art. 73B, secs. 83(8), 86B(6) (1988).↩
5. The Retirement System is a qualified defined benefit plan under sec. 401(a). The Retirement System requires mandatory nondeductible employee contributions. The Pension System is also a qualified defined benefit plan under sec. 401(a) but generally does not require mandatory nondeductible employee contributions. The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems. The trusts maintained as part of the Retirement System and the Pension System are both exempt from taxation under sec. 501(a).↩
6. In determining the amount of the deficiency in excise tax, it would appear that respondent erred in not reducing by $ 2,000 the amount of the Transfer Refund before applying the applicable percentage under sec. 4973, thereby overstating the deficiency by $ 120 (i.e., 0.06 X $ 2,000).↩
7. The definition provided by the dictionary, "by reason of" or "because of", is not enlightening in this instance. See Webster's Third New International Dictionary (1981).↩
8. The plan provisions of the Maryland State Employees' Retirement System and the Maryland State Employees' Pension System are set forth in secs. 1 through 80 and secs. 111 through 129, respectively, of art. 73B of the Annotated Code of Maryland. The plan provisions of the Maryland State Teachers' Retirement System and the Maryland State Teachers' Pension System are set forth in secs. 81 through 104 and secs. 140 through 155, respectively, of art. 73B of the Annotated Code of Maryland. The sections governing the foregoing two Retirement Systems contain virtually identical provisions authorizing distributions to employees who choose to transfer from a retirement system to a pension system. See Md. Ann. Code art. 73B, secs. 11B(5), 14(1)(g) (1988), regarding the Maryland State Employees' Retirement System; Md. Ann. Code art. 73B, sec. 89(1)(e) (1988), regarding the Maryland State Teachers' Retirement System.↩
9. We note that petitioners' reliance on Smith v. United States, 460 F.2d 1005 (6th Cir. 1972) (addressing the issue of when a "separation from the service" occurs in the context of a change of beneficial ownership and deferred dissolution of the taxpayer's employer), is misplaced. The court in Smith "[observed] that the statute does not require the distribution to be solely on account of separation from the service." Id. at 1017. Our Memorandum Opinion in Hylton v. Commissioner, T.C. Memo. 1995-27, does not implicate the reasoning of Smith because the facts in Hylton did not require that we address the issue of whether a distribution must be made solely "on account of the employee's separation from the service" in order to satisfy the requirements of sec. 402(e)(4)(A)(iii). Instead, as noted above, we concluded that the distribution was not↩ made "on account of * * * [the taxpayer's] separation from the service" and was therefore not eligible for rollover treatment under sec. 402(a)(5)(D). Rather, we concluded that the distribution was made on account of the taxpayer's election to transfer from the Teachers' Retirement System to the Teachers' Pension System.
10. In their Brief, petitioners indicate that "In a confusing argument, the IRS is claiming that the taxpayer is not entitled to rollover his distribution because he received it 'voluntarily,' as though there is something vaguely disreputable about doing anything voluntarily." We understand respondent's position to be that petitioner received the Transfer Refund on account of petitioner's election to transfer from the Retirement System to the Pension System and not on account of petitioner's election to retire↩. We do not understand respondent's position to depend on a distinction between the voluntary and the involuntary receipt of a distribution.
11. This point is underscored by petitioner's testimony that he had anticipated applying some or all of the Transfer Refund to his son's education. As noted above, the Transfer Refund would not have been available to petitioner if he had not transferred from the Retirement System to the Pension System.↩