T.C. Memo. 1997-389


UNITED STATES TAX COURT


GLENN L. WITTSTADT, JR. AND LYNNE M. WITTSTADT, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7123-93.                    Filed August 25, 1997.


Robert G. Cassilly, for petitioners.

Alan R. Peregoy, for respondent.


MEMORANDUM OPINION


DAWSON, Judge:  This case was assigned to Special Trial
Judge Robert N. Armen, Jr., pursuant to the provisions of section
7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, <u>Special Trial Judge</u>:  This case is before the Court on petitioners' Motion for Costs, as amended, filed pursuant to section 7430 and Rule 231.[2]  Petitioners seek to recover approximately $16,000 incurred in resisting respondent's deficiency determinations for the taxable year 1989.

After concessions by respondent,[3] the issues for decision are as follows:

(1) Whether respondent's position in the proceedings was substantially justified; and, if not,

---

[1]     Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1989, the taxable year in issue.  However, all references to section 7430 are to such section in effect at the time that the petition was filed. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]     Also pending before the Court is petitioners' Motion for Entry of Decision.  However, at the hearing on that motion, the parties agreed that there is an overpayment in petitioners' Federal income tax for 1989 in the amount of $50,808.78, which amount, as well as interest thereon, has been refunded to petitioners.  Accordingly, we need not address petitioners' Motion for Entry of Decision in this memorandum opinion.

[3]     Respondent concedes: (1) Petitioners exhausted their administrative remedies, see sec. 7430(b)(1); (2) petitioners did not unreasonably protract the court proceeding, see sec. 7430(b)(4); (3) petitioners substantially prevailed in the court proceeding, see sec. 7430(c)(4)(A)(ii); and (4) petitioners satisfy the applicable net worth requirement, see sec. 7430(c)(4)(A)(iii).

(2) whether the attorney's fees and other costs that petitioners seek to recover are reasonable in amount.[4]

We consider these issues in the context of a case wherein decision was originally entered essentially in respondent's favor pursuant to a memorandum opinion of this Court, but such decision was subsequently reversed on appeal.

Neither party requested an evidentiary hearing, and the Court concludes that such a hearing is not necessary for the proper disposition of petitioners' motion. Rule 232(a)(3). We therefore decide the matter before us based on the record that has been developed to date.

I. Background

Glenn L. Wittstadt, Jr. (petitioner) and Lynne M. Wittstadt resided in Edgewood, Maryland, at the time that their petition was filed with the Court.

A. The Notice of Deficiency

By notice of deficiency dated March 11, 1993, respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1989, as well as deficiencies in petitioners' Federal excise taxes under sections 4973 and 4980A, in the total amount of $89,740.84. The linchpin for the deficiencies was respondent's determination that a distribution (the so-called

---

[4] Respondent concedes that all but $150 of the costs incurred by petitioners constitute "reasonable litigation costs" within the meaning of sec. 7430(c)(1).

Transfer Refund) that was received by petitioner from the Maryland State Teachers' Retirement System (the Retirement System) did not qualify for tax-free rollover treatment under section 402(a)(5). In turn, this determination was premised on respondent's ultimate determination that the Transfer Refund was not made "on account of" petitioner's separation from the service of the Baltimore County Public Schools; i.e., petitioner's retirement as a teacher, but rather was made "on account of" petitioner's election to transfer from the Retirement System to the Maryland State Teachers' Pension System (the Pension System).

B. The Parties' Pleadings

On April 9, 1993, petitioners filed a timely petition (the Petition) in which they contested the deficiencies determined by respondent. In the Petition, which they filed pro se, petitioners alleged, in part, as follows:

> The issue in this case was whether my [Transfer Refund] distribution met the IRS requirements for a tax free roll-over or not * * * .

> The December 4, 1992 final appeal decision letter from the local IRS Appeals Division states that [the Transfer Refund] did not [qualify for tax-free rollover treatment] because the distribution WAS NOT received because of "Separation from the job" (retirement) as required; but because I signed an "election form to transfer participation from the old ... retirement fund to the new ... retirement fund".

>      *     *     *     *     *     *     *

> Following the June 30, 1989 separation [petitioner's final day of employment] the State had only one, single, required course of action, namely to make the distribution to me on or after July 1, 1989,

as requested and contracted for on the effective documents, and that was subsequently carried out.  The fact that the amount and nature of the distribution was the result of a choice had nothing to do with when it had to be paid and was, i.e. after retirement as requested and contracted for, thus satisfying the roll-over requirement.

On June 10, 1993, respondent filed an answer (the Answer) to the Petition.  In the Answer, respondent admitted the first two of the above-quoted paragraphs in the Petition and denied the third.

C. Petitioners' Motion for Summary Judgment

On January 31, 1994, petitioners, again acting pro se, filed a motion for summary judgment.  In their motion, petitioners argued that the Transfer Refund was made on account of petitioner's retirement and not on account of petitioner's election to transfer from the Retirement System to the Pension System.  The penultimate sentence of petitioners' motion stated as follows:  "But for his retirement, Mr. Wittstadt would not have elected to receive the lump-sum payment and no such distribution would have been made."  Petitioners also alleged that petitioner's election to transfer from the Retirement System to the Pension System was invalid under Maryland State law.

On March 23, 1994, a hearing was conducted in Washington, D.C., on petitioners' motion for summary judgment.  At that time, the parties indicated that they were attempting to obtain facts and documents from the Maryland State Retirement Agency. Respondent's counsel stated, in part, as follows:

I have had conversations with the assistant attorney general of the State of Maryland concerning what their testimony and official records would be. They indicate to me merely that there is disputed facts to the extent that their records do not coincide with allegations of fact that Mr. Wittstadt has made.

And, therefore, I think, ultimately if Mr. Wittstadt would waive his disclosure privilege with the State of Maryland, the State would be able to provide an affidavit that would show that material facts are in dispute in this case.

The Court agreed to continue petitioners' motion for summary judgment for further hearing. In agreeing to do so, the Court stated, in part, as follows:

What the Court would expect is that, to the extent possible, the parties would stipulate or agree to facts not reasonably in dispute, and indicate so you can highlight to the Court what facts are left in dispute, and whether or not to support -- Respondent seems to be saying that he believes that summary judgment is not appropriate here because there may be a dispute on facts. But it would be certainly helpful to have a record in which the Court can decide that by stipulation.

On April 20, 1994, a further hearing was conducted in Washington, D.C., on petitioners' motion for summary judgment.[5] However, contrary to the Court's directive expressed at the prior hearing, no executed stipulations were filed by the parties. In this regard, respondent's counsel acknowledged that information had been obtained from the Maryland State Retirement Agency; respondent's counsel stated that he had prepared stipulations of

---

[5]    We note that at no time did respondent ever file any cross-motion for summary judgment. As will be discussed infra in the text above, respondent thought that there were factual issues in dispute.

agreed and unagreed facts, but that petitioners had declined to execute such stipulations. Petitioner confirmed this representation, indicating that he thought such stipulations were irrelevant to his motion.

Respondent's counsel then identified what he considered to be two disputed factual matters: First, the effective date of petitioner's election to transfer from the Retirement System to the Pension System; and second, the reason why the Transfer Refund was paid to petitioner.

Regarding the first disputed factual matter, respondent took the position that the effective date of petitioner's election to transfer from the Retirement System to the Pension System was June 1, 1989, a date that preceded the effective date of petitioner's retirement. In contrast, petitioner took the position that the effective date of his election was July 1, 1989, a date that followed the final day of petitioner's employment.

The second disputed matter involved causation; i.e., what caused the State of Maryland to make the Transfer Refund to petitioner. In this regard, respondent took the position that the Maryland made the Transfer Refund because of petitioner's election to transfer from the Retirement System to the Pension System. In contrast, petitioner took the position that Maryland made the Transfer Refund because of petitioner's retirement.

As previously indicated, petitioner took the position that the effective date of his election to transfer from the Retirement System to the Pension System came after the final day of his employment.  Petitioner's position in respect of this issue was consequential for two reasons: First, because it facilitated petitioners' principal argument that the Transfer Refund was made because of petitioner's retirement; and second, because it facilitated petitioners' ancillary argument that the Transfer Refund was not made because of petitioner's election to transfer from the Retirement System to the Pension System because such election was invalid under Maryland State law.

At the conclusion of the hearing, the Court denied petitioners' motion.  The Court took this action essentially for two reasons:  First, and principally, because the record was so incomplete so as to preclude a rational disposition of the case; and second, because factual issues appeared to be in dispute. Near the end of the hearing, the following colloquy took place between the Court and petitioner:

> THE COURT:  * * *  Mr. Wittstadt, at this point, I am not clear what your position is with respect to the stipulation of facts.  But when this case was continued last time, and as I understand it from respondent's counsel that there are some documents, the Court does not now have those documents.  Without those documents, I couldn't come close--let the Court finish--couldn't come close to ruling in your favor on this motion.
>
> A motion for summary judgment requires that there be no genuine material issue of fact in dispute.  So I don't have any facts or certainly anywhere near sufficient facts to rule in your favor.  Even if you do

stipulate, respondent's counsel seems to be saying that there are a couple of areas of factual matters that are in dispute.

* * * * * * *

What would you like to do with this case?

PETITIONER:  In other words, we can't do it by motion?

THE COURT:  It sure doesn't look like it.  I think you understand why, that there are matters here in dispute and respondent is saying there are matters in dispute.  You don't seem to be disagreeing with that, that there are some matters which require some testimony.

If that is the case, it's clear that the Court cannot rule in your favor on the summary judgment motion.  You can't get a dispositive answer, which is what you want.  So the next step is trial.

D. Entry of Appearance by Petitioners' Counsel

On July 18, 1994, petitioners' counsel entered his appearance in this case.  On the following day, petitioners, by counsel, commenced formal discovery against respondent by serving a request for production of documents.

E. The Hylton Case

On January 23, 1995, the Court filed its memorandum opinion in Hylton v. Commissioner, T.C. Memo. 1995-27.  That case, which was decided after a trial at which a representative of the Maryland State Retirement Agency testified and 30 exhibits were offered into evidence,[6] presented facts strikingly similar to those involved in the present case.  Thus, in Hylton, the

---

[6]    The parties stipulated 10 exhibits; the remaining 20 exhibits were offered during the course of the trial, most of which were received into evidence.

taxpayer, a Maryland public school teacher, elected to transfer from the Retirement System to the Pension System, effective January 1, 1990, and received thereafter a Transfer Refund.  In May 1990, the taxpayer applied for retirement and retired in fact, effective July 1, 1990.  Hylton concluded as follows:

> Petitioners have shown that petitioner's election to transfer to the Pension System, due to which election he received the Transfer Refund, was related to his retirement planning.  In other words, they have demonstrated that the decision to retire was a "link in the chain of causalities" leading to the receipt of the Transfer Refund. [Citation omitted.] However, we view petitioner's separation from service as no more than a "mere link in the chain of causalities" leading to the receipt of the Transfer Refund. [Citation omitted.]

> Accordingly, we hold that petitioner did not receive the Transfer Refund on account of his retirement.  Rather, he received the Transfer Refund because of his election to transfer from the Retirement System to the Pension System, an election that, under Maryland law, lacked the requisite connection to petitioner's separation from service.

In reaching the foregoing conclusion, we relied heavily on Gunnison v. Commissioner, 54 T.C. 1766 (1970), affd. 461 F.2d 496 (7th Cir. 1972), where we considered the meaning of the phrase "on account of" in an earlier version of the operative statute and construed it narrowly.  Id. at 1773.

Hylton was never appealed, and the decision in that case became final on April 25, 1995.  See sec. 7481(a)(1), 7483; cf. Fed. R. App. P. 13(a).

F. The Notice of Trial

On February 1, 1995, the Court calendared the present case for trial at a Special Session of the Court scheduled to commence on April 24, 1995, in Baltimore, Maryland.

G. Progeny of the Hylton Case

On March 6, 1995, the Court filed Brown v. Commissioner, T.C. Memo. 1995-93.[7] That case, which was decided on the basis of a fully-stipulated record, presented facts virtually indistinguishable from those in the present case. Thus, in Brown, the taxpayer, a Maryland public school teacher, elected to transfer from the Retirement System to the Pension System, effective June 1, 1989. The taxpayer also applied to retire, effective July 1, 1989. Thereafter, the taxpayer received a Transfer Refund. Applying the same analysis as in Hylton v. Commissioner, supra, we held in Brown that the taxpayer did not receive the Transfer Refund on account of his retirement, but rather on account of his election to transfer from the Retirement System to the Pension System.

---

[7] Brown v. Commissioner, T.C. Memo. 1995-93 was ultimately reversed without published opinion per curiam, 97 F.3d 1446 (4th Cir. 1996), on the basis of Adler v. Commissioner, 86 F.3d 378 (4th Cir. 1996), vacating and remanding T.C. Memo. 1995-148. See infra.

On March 8, 1995, the Court filed its memorandum opinion in Dorsey v. Commissioner, T.C. Memo. 1995-97.[8] Once again, we relied heavily on Hylton v. Commissioner, supra, in holding that the taxpayer's Transfer Refund was not received on account of the taxpayer's retirement, but rather on account of the taxpayer's election to transfer from the Retirement System to the Pension System.

On April 4, 1995, the Court filed Adler v. Commissioner, T.C. Memo. 1995-148, revd. 86 F.3d 378 (4th Cir. 1996). That case, which was decided after a trial at which a representative of the Maryland State Retirement Agency testified, presented facts virtually indistinguishable from those in the present case. Thus, in Adler, the taxpayer, a Maryland State employee, elected to transfer from the Retirement System to the Pension System, effective June 1, 1990. The taxpayer also applied to retire, effective July 1, 1990. Thereafter, the taxpayer received a Transfer Refund. Applying the same analysis as in Hylton v. Commissioner, supra, we held in Adler that the taxpayer did not receive the Transfer Refund on account of his retirement, but rather on account of his election to transfer from the Retirement System to the Pension System.

_____

[8] The taxpayer's appeal in Dorsey was ultimately dismissed. Dorsey v. Commissioner, 91 F.3d 129 (4th Cir. 1996).

H. The Trial

On April 26, 1995, the present case was called for trial in Baltimore, Maryland. At that time the Court filed the parties' stipulation of facts, which included some 16 exhibits. The Court also filed the parties' trial memoranda. Petitioners' trial memorandum estimated trial time at 6 hours and stated that petitioners expected to call 3 witnesses, including a representative of the Maryland State Retirement Agency.

As it turned out, the trial of this case lasted less than 2 hours, and the only witness who was called to testify was petitioner, who was examined and cross-examined.

A principal thrust, if not the principal thrust, of petitioners' presentation at trial (and on brief) was that the Transfer Refund was not made pursuant to Maryland State law (because the Transfer Refund would have been invalid if made pursuant to Maryland State law), but rather was made pursuant to an administrative policy of the Maryland State Retirement Agency, which administrative policy required petitioner to retire in order to receive the Transfer Refund.[9]

---

[9] Thus, on brief, petitioners argued as follows:

Petitioner's election to receive a [Transfer Refund] was an election made pursuant to the retirement policy legally established by the Board and was not made pursuant to the statutory transfer option in [Md. Ann. Code, art. 73B] Section 83(8). In order to elect the retirement option as established by the Board's policy it was necessary for Petitioner Glenn L.

(continued...)

- 14 -

After the conclusion of trial, the Court directed the parties to file seriatim briefs. See Rule 151(b). Petitioners' opening brief includes 8 pages of proposed findings of fact. See Rule 151(e)(3). Respondent's answering brief includes 5 pages of objections to petitioners' proposed findings of fact and 4 pages of respondent's proposed findings of fact. Id. Petitioners' reply brief includes 4-½ pages of objections to respondent's proposed findings of fact. Id.

I. The Memorandum Opinion

In T.C. Memo. 1995-492, filed October 11, 1995, the Court decided the present case. In our memorandum opinion, we rejected petitioners' argument that petitioner's Transfer Refund had not been received pursuant to Maryland State law but rather pursuant to some administrative policy. Regardless, we went on to hold that the Transfer Refund was received on account of petitioner's election to transfer from the Retirement System to the Pension System and not on account of petitioner's retirement. In so holding, we relied heavily on Hylton v. Commissioner, T.C. Memo. 1995-27, as well as a number of other "Transfer Refund cases"

[9](...continued)
Wittstadt to have retired. Because Petitioner's retirement was a necessary condition precedent to his participation in the policy distribution option, the distribution by the Board to Petitioner was made "on account of" Petitioner Glenn L. Wittstadt's "separation from service," as those terms are used in I.R.C. Section 402(a)(5)(D). Consequently, the distribution to Petitioner qualified for tax free treatment as provided for in Section 402(a)(5)(D).

that we had previously decided, specifically including <u>Adler v. Commissioner</u>, T.C. Memo. 1995-148, revd. 86 F.3d 378 (4th Cir. 1996).

J. <u>Appeal, Assessment, and Collection</u>

Following a Rule 155 computation, the Decision in the present case was entered on January 31, 1996.  On February 20, 1996, petitioners filed a notice of appeal.  Petitioners did not, however, file a bond to stay assessment and collection.  See sec. 7485(a).  Accordingly, on May 21, 1996, respondent assessed the deficiencies in income and excise taxes as redetermined in our Decision.[10]

Subsequently, petitioners made two substantial payments in partial satisfaction of the foregoing assessment.  Thereafter, in response to a "final notice" dated July 29, 1996, petitioners entered into an installment payment agreement with respondent on August 20, 1996.  See sec. 6159.  Petitioners ultimately made the following payments on the indicated dates:

| Date | Amount |
|------|--------|
| 6/5/96 | $25,000 |
| 7/16/96 | 25,000 |
| 9/10/96 | 243 |
| 10/7/96 | 286 |
| 11/7/96 | 286 |

---

[10]  Respondent also assessed interest.  See sec. 6601(a), (e)(1).

On October 22, 1996, respondent filed a notice of Federal tax lien in the county of petitioners' residence. Also, by notice dated December 25, 1996, respondent reminded petitioners that their next payment pursuant to the installment payment agreement was due on January 8, 1997.

K. The Adler Case on Appeal

On June 21, 1996, the Court of Appeals for the Fourth Circuit decided Adler v. Commissioner, 86 F.3d 378, which vacated and remanded our decision in T.C. Memo. 1995-148. In Adler v. Commissioner, the Court of Appeals agreed that the phrase "on account of" requires "a causal connection between the employee's separation from service and the distribution from the qualified plan." 86 F.3d at 380. However, the Court of Appeals construed the phrase "on account of" to mean "incident to" and concluded that the requisite degree of causality required by the operative statute had been satisfied. In so holding, the Court of Appeals stated: "As the purpose of the statute [section 402] is to protect and encourage retirement savings, it is plain that a distribution to an employee that occurs incident to his retirement should be entitled to rollover treatment." 86 F.3d at 381.

On September 10, 1996, the Solicitor General of the United States decided that a petition for a writ of certiorari would not be filed in respect of Adler v. Commissioner, 86 F.3d 378. Cf. 28 U.S.C. sec. 2101(c)(1994).

- 17 -

L. Reversal and Subsequent Developments

On or about November 8, 1996, and after some prodding by petitioners, respondent filed a motion with the Court of Appeals asking that the Tax Court's Decision entered on January 31, 1996, be reversed on the basis of Adler v. Commissioner, 86 F.3d 378 (4th Cir. 1996).  Shortly thereafter, on November 14, 1996, the Court of Appeals issued an order granting respondent's motion and reversing our Decision.

No later than November 22, 1996, respondent's counsel undertook action to suspend any further collection in respect of the May 1996 assessment against petitioners, pending abatement of such assessment and the refund of amounts previously paid. Respondent's counsel specifically advised respondent's problem resolution officer for the Delaware-Maryland district that "Mr. Wittstadt no longer owes the deficiency for 1989" and directed the officer to "take whatever steps [are] necessary to terminate the required payment agreement."  Nevertheless, during the fall of 1996, petitioners incurred costs in trying to have collection terminated.

On January 9, 1997, the record in this case was returned by the Court of Appeals and received by this Court.  Thereafter, by Order dated January 28, 1997, the Court vacated the Decision entered January 31, 1996, and directed the parties either to furnish an agreed form of decision suitable for entry of decision by the Court or to move for such relief as they thought might be

warranted under the circumstances then present.  Petitioners then filed their motion for costs, as well as their motion for entry of decision.[11]

II. Discussion

We apply section 7430 as amended by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 6239(a), 102 Stat. 3342, 3743-3746.[12]

A. Requirements for a Judgment under Section 7430

Under section 7430(a), a judgment for litigation costs incurred in connection with a court proceeding may only be awarded if a taxpayer: (1) Is the "prevailing party"; (2) has exhausted his or her administrative remedies within the IRS; and (3) did not unreasonably protract the court proceeding.  Sec. 7430(a), (b)(1), (4).  A taxpayer must satisfy each of these three requirements in order to be entitled to a judgment under section 7430.  Rule 232(e).

---

[11]    Respondent contends that petitioners' motion for costs was filed out of time and should be "dismissed" for that reason. We reject respondent's contention and do not consider it further.

[12] Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 6239(a), 102 Stat. 3342, 3743-3746 is generally applicable to proceedings commenced after Nov. 10, 1988.  TAMRA sec. 6239(d), 102 Stat. 3746.  Congress amended sec. 7430 most recently in the Taxpayer Bill of Rights 2 (TBOR2), Pub. L. 104-168, secs. 701-704, 110 Stat. 1452, 1463-1464 (1996). However, the amendments made by TBOR2 apply only in the case of proceedings commenced after July 30, 1996.  TBOR2 secs. 701(d), 702(b), 703(b), and 704(b), 110 Stat. 1463-1464.  Inasmuch as the petition herein was filed on April 9, 1993, the amendments made by TBOR2 do not apply in the present case.  Maggie Management Co. v. Commissioner, 108 T.C. _____ (June 11, 1997).

Respondent concedes that petitioners exhausted their administrative remedies within the IRS. Respondent also concedes that petitioners did not unreasonably protract the court proceeding. Accordingly, we must decide whether petitioners qualify as the "prevailing party" in the court proceeding.

B. Prevailing Party

In order to qualify as the "prevailing party", a taxpayer must establish: (1) The position of the United States in the proceeding was not substantially justified; (2) the taxpayer has substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented; and (3) the taxpayer satisfies the applicable net worth requirement. Sec. 7430(c)(4)(A).

Respondent concedes that petitioners substantially prevailed within the meaning of section 7430(c)(4)(A)(ii). Respondent also concedes that petitioners satisfy the applicable net worth requirement. However, respondent contends that the position taken by respondent in the court proceeding was substantially justified.

Petitioners bear the burden of proving that respondent's position in the court proceeding was not substantially justified. Rule 232(e); Dixson Corp. v. Commissioner, 94 T.C. 708, 714-715 (1990); Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990). Accordingly, we must decide whether petitioners have carried their burden of proving that

respondent's position in the court proceeding was not substantially justified.

C. <u>Respondent's Position in the Court Proceeding</u>

Whether respondent's position was not substantially justified is a question of fact. We resolve such issue by the application of a reasonableness standard. See <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988) (construing similar language in the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412 (1988)); see also <u>Maggie Management Co. v. Commissioner</u>, 108 T.C. ____, ____, (June 11, 1997) (slip op. at 18-19); <u>Sokol v. Commissioner</u>, 92 T.C. 760, 763 n.7 (1989); <u>Sher v. Commissioner</u>, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).

The position of the United States that must be examined against the reasonableness standard is the position taken by the Commissioner in the answer to the petition and thereafter. <u>Bertolino v. Commissioner</u>, 930 F.2d 759, 761 (9th Cir. 1991); <u>Sher v. Commissioner</u>, 861 F.2d at 134-135; <u>Maggie Management Co. v. Commissioner</u>, <u>supra</u> (slip op. at 19); see sec. 7430(c)(7)(A).

The fact that the Commissioner eventually loses a case does not, by itself, establish that the Commissioner's position was unreasonable. <u>Estate of Perry v. Commissioner</u>, 931 F.2d 1044, 1046 (5th Cir. 1991); <u>Swanson v. Commissioner</u>, 106 T.C. 76, 94 (1996); <u>Powers v. Commissioner</u>, 100 T.C. 457, 471 (1993).

In the present case, respondent's position in the court proceeding was that petitioner's Transfer Refund did not qualify

for tax-free rollover treatment under section 402(a)(5) because the Transfer Refund was not made on account of petitioner's retirement as a teacher, but rather on account of petitioner's election to transfer from the Retirement System to the Pension System. Respondent consistently maintained this position throughout the court proceeding until respondent conceded the case on November 8, 1996, in the Court of Appeals.

D. Petitioners' Contentions

Petitioners contend that respondent's position was unreasonable for at least three reasons:

First, petitioners contend that respondent's position was contrary to congressional intent "to preserve retirement funds".

Second, petitioners contend that respondent should not have opposed petitioners' motion for summary judgment, but rather should have permitted the Court to adjudicate the disputed issues in this case in a summary fashion. If the Court had done so, then, so the argument goes, petitioners would have been spared the cost of trial.[13]

Third, petitioners contend that respondent was unreasonable in pursuing collection of the assessed deficiencies, at least after the Court of Appeals decided Adler v. Commissioner, 86 F.3d 378 (4th Cir. 1996).

---

[13] Petitioners acknowledge that if the Court had rendered summary judgment for respondent (even though respondent never filed any cross-motion for summary judgment), petitioners would not have been spared the cost of appeal.

We consider each of petitioners' contentions in turn.

E. <u>Congressional Intent</u>

Petitioners contend that respondent's position in the court proceeding was not substantially justified because respondent's position "is in conflict with stated Congressional intent." In this regard, petitioners rely on the statement made by the Court of Appeals in reversing <u>Adler v. Commissioner</u>, T.C. Memo. 1995-148, that "As the purpose of the statute [section 402] is to protect and encourage retirement savings, it is plain that a distribution to an employee that occurs incident to his retirement should be entitled to rollover treatment." <u>Adler v. Commissioner</u>, 86 F.3d at 381.

Petitioners' contention is tantamount to arguing that respondent's position was unreasonable because respondent lost the case. However, as previously stated, the fact that the Commissioner eventually loses a case does not, by itself, establish that the Commissioner's position was unreasonable. <u>Estate of Perry v. Commissioner</u>, <u>supra</u>; <u>Swanson v. Commissioner</u>, <u>supra</u>; <u>Powers v. Commissioner</u>, <u>supra</u>.

Further, we recall that respondent did not lose the present case in this Court. Rather, respondent ultimately lost the case on appeal. Under these circumstances, a taxpayer ordinarily has a heavy burden in contending that respondent's position was unreasonable. The legislative history of section 7430 states that "when a taxpayer loses in the trial court and obtains a

reversal of that decision in the appellate court, the appellate court would not normally award attorney's fees to the taxpayer since the trial court, by definition, had found the government's position to be reasonable." H. Rept. 97-404, 15 (1981). See Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (J. Comm. Print 1982) 450; 127 Cong. Rec. S-32078 (1981); Auto-Ordnance Corp. v. United States, 14 Cl. Ct. 295, 300 (1988); see also H. Conf. Rept. 97-760, 686-687 (1982).

Further, respondent's position was consistent with the holding of this Court as expressed in four cases with similar, if not indistinguishable, facts that had been decided prior to the trial of the present case. Thus, in Hylton v. Commissioner, T.C. Memo. 1995-27, Brown v. Commissioner, T.C. Memo. 1995-93, Dorsey v. Commissioner, T.C. Memo. 1995-97, and Adler v. Commissioner, T.C. Memo. 1995-148, this Court held that a Transfer Refund was received not on account of retirement, but rather on account of the taxpayer's election to transfer from the Retirement System to the Pension System. Indeed, the decision in the first of the foregoing cases, Hylton v. Commissioner, supra, was final at the time of trial of the present case.

Finally, in view of the fact that a linchpin for our decision in Hylton v. Commissioner, supra, was Gunnison v. Commissioner, 54 T.C. 1766 (1970), affd. 461 F.2d 496 (7th Cir. 1972), a case in which we construed narrowly the phrase "on

account of" in an earlier version of the operative statute, we think that respondent's position was reasonable, both at the time that the notice of deficiency was issued in March 1993 and at the time that the Answer was filed in June 1993. See Pierce v. Underwood, 487 U.S. 552, 565 (1988)(the Commissioner's position must have a reasonable basis in law).

In view of the foregoing, we reject petitioners' first contention.

F. Petitioners' Motion for Summary Judgment

Petitioners also contend that respondent was unreasonable in "refus[ing] to submit the case for decision by way of summary judgment". We disagree.

Petitioners' contention overlooks a number of matters. First, the Court denied petitioners' motion for summary judgment principally because of a record so incomplete that a rational disposition of the case was not possible. Because petitioners were the moving party, petitioners bore responsibility for ensuring that the record provided a basis for their motion.

Second, the Court also denied petitioners' motion for summary judgment because genuine issues of material fact appeared to be in dispute. Here we recall that in an effort to more clearly determine this matter, the Court had directed the parties to stipulate facts, and the Court even continued the original hearing on petitioners' motion for that purpose. Respondent's counsel complied with this directive by preparing stipulations of

agreed and unagreed facts; however, petitioners declined to execute either stipulation or to otherwise cooperate in the process.

Further, petitioners had raised matters that clearly implicated factual issues. Thus, petitioners had questioned the effective date of petitioner's election to transfer from the Retirement System to the Pension System; petitioners had challenged the validity of that election; and petitioners had raised the fundamental issue of causation; i.e., the reason why the Transfer Refund had been paid. Indeed, petitioners alleged that "But for his retirement, Mr. Wittstadt would not have elected to receive the lump-sum payment and no such distribution would have been made."

Third, the Court did not deny petitioners' motion with prejudice. Thus, petitioners were free to cure the defects as identified by the Court at the hearing on April 20, 1994, and refile their motion. However, they chose not to do so.[14]

Fourth, the initial Transfer Refund case, Hylton v. Commissioner, T.C. Memo. 1995-27, was decided after a trial at

---

[14]    In addition, submission of the case by the parties on a fully stipulated basis pursuant to Rule 122 provided an alternative to trial. However, the record is silent regarding any effort by petitioners to encourage respondent to submit the case on that basis. We find this curious in view of petitioners' contention that there were no genuine issues of material fact in this case. We note that Brown v. Commissioner, T.C. Memo. 1995-93, revd. without published opinion per curiam 97 F.3d 1446 (4th Cir. 1996), was decided by this Court on a fully stipulated basis.

which a representative of the Maryland State Retirement Agency testified and at which numerous exhibits were offered in evidence at trial. Moreover, the Transfer Refund case that led to a published opinion by the Court of Appeals, Adler v. Commissioner, T.C. Memo. 1995-148, revd. 86 F.3d 378 (4th Cir. 1996), was decided by this Court after a trial.

Fifth, the decision in Hylton v. Commissioner, supra, became final before the trial of the present case. If petitioners regarded their case as presenting nothing other than a pure issue of law, they could have agreed to entry of decision on the basis of Hylton and then appealed. Instead, petitioners went forward at trial on the theory that the Transfer Refund was not made pursuant to Maryland State law, but rather pursuant to an administrative policy that required petitioner to retire in order to receive the Transfer Refund. Petitioners' strategy was obviously to present a theory that might serve to distinguish their case from Hylton, Brown, Dorsey, and Adler and thereby avoid the need to appeal. However, the fact that petitioners' strategy was unsuccessful does not mean that respondent's position was unreasonable.

Finally, we do not think that respondent was under any obligation to move for summary judgment. Indeed, respondent thought that there were genuine issues of material fact. And the reasonableness of respondent's view as to the existence of disputed factual issues is demonstrated, if by no other fact, by

petitioners' theory at trial regarding an alleged administrative policy that required petitioner to retire in order to receive the Transfer Refund.[15]  Accordingly, we do not comprehend how decision in this case could have been entered pursuant to any motion for summary judgment.

In view of the foregoing, we reject petitioners' second contention.

G. Respondent's Collection Activity

Finally, petitioners contend that respondent was unreasonable in pursuing collection of the assessed deficiencies, at least after the Court of Appeals decided Adler v. Commissioner, 86 F.3d 378 (4th Cir. 1996).

We begin by recalling that petitioners did not file a bond to stay assessment and collection when they filed their notice of appeal.  Accordingly, respondent was permitted, by law, to assess and collect the deficiencies in income and excise taxes as

---

[15]    The pages of objections in each party's post-trial brief to the other party's proposed findings of fact demonstrate the parties' perception that more than a pure issue of law was involved in this case.

We also note that the day after petitioners' counsel entered his appearance in this case, petitioners commenced formal discovery against respondent.  Again, such action demonstrates petitioners' perception that more than a pure issue of law was involved in this case.

redetermined in our Decision, see sec. 7485(a),[16] and respondent was not unreasonable to have done so.

On June 21, 1996, the Court of Appeals decided Adler v. Commissioner, supra. Petitioners contend that it was unreasonable for respondent to pursue further collection after that date. In contrast, we conclude that it was unreasonable for respondent to pursue further collection after October 1, 1996.[17]

---

[16] Sec. 7485 provides, in relevant part, as follows:

SEC. 7485 BOND TO STAY ASSESSMENT AND COLLECTION.

(a) Upon Notice of Appeal.--Notwithstanding any provision of law imposing restrictions on the assessment and collection of deficiencies, the review under section 7483 shall not operate as a stay of assessment or collection of any portion of the amount of the deficiency determined by the Tax Court unless a notice of appeal in respect of such portion is duly filed by the taxpayer, and then only if the taxpayer--

(1) on or before the time his notice of appeal is filed has filed with the Tax Court a bond in a sum fixed by the Tax Court not exceeding double the amount of the portion of the deficiency in respect of which the notice of appeal is filed, and with surety approved by the Tax Court, conditioned upon the payment of the deficiency as finally determined, together with any interest, additional amounts, or additions to the tax provided for by law * * *

[17] We need not decide whether it was unreasonable for respondent to pursue further collection between June 21, 1996, and Oct. 1, 1996, because that issue appears to be moot. In this regard, we note that during such period petitioners did not incur any attorney's fees and that the only cost in respect of which petitioners seek reimbursement appears to represent a $65 payment for Westlaw service related to petitioners' reply brief filed in the Court of Appeals before Adler v. Commissioner, 86 F.3d 378 (4th Cir. 1996), was decided. Cf. Estate of Perry v.

(continued...)

After the Court of Appeals decided <u>Adler v. Commissioner</u>, <u>supra</u>, respondent had a 45-day period to petition the Court of Appeals for rehearing or rehearing en banc, see Fed. R. App. P. 35(c), 40(a), and a 90-day period to petition the Supreme Court to file a petition for a writ of certiorari, see 28 U.S.C. sec. 2101(c)(1994).  On September 10, 1996, the Solicitor General decided that a petition for a writ of certiorari would not be filed in <u>Adler v. Commissioner</u>, <u>supra</u>.

We think that by the end of September 1996, respondent should have concluded that the decision of the Court of Appeals in <u>Adler</u> would control the disposition of the present case and respondent should have terminated collection against petitioners. Nevertheless, on October 22, 1996, respondent filed a notice of Federal tax lien in the county of petitioners' residence. Moreover, by notice dated December 25, 1996, a date more than a month after the Court of Appeals had reversed our Decision in the present case, respondent reminded petitioners that their next payment pursuant to the installment payment agreement was due on January 8, 1997.  During this period, petitioners incurred costs in trying to persuade respondent to terminate collection that should have terminated earlier.

---

[17](...continued)
<u>Commissioner</u>, 931 F.2d 1044 (5th Cir. 1991); <u>Keasler v. United States</u>, 766 F.2d 1227 (8th Cir. 1985).

In view of the foregoing, we hold that it was unreasonable for respondent to pursue further collection after October 1, 1996.

H. Amount of Recoverable Costs

Finally, we turn to the matter concerning the amount of recoverable costs. Here we observe that respondent concedes that all but $150 of the costs incurred by petitioners constitutes "reasonable litigation costs" within the meaning of sec. 7430(c)(1).[18] The disputed $150 amount, however, does not pertain to any cost incurred after September 1996. Accordingly, we conclude that the costs incurred for the months of October 1996 through February 1997, as enumerated in petitioners' counsel's single invoice for those months, are recoverable by petitioners.[19]

III. Conclusion

Based on the foregoing, we hold that respondent's position in the court proceeding was not unreasonable through September 1996, but that respondent acted unreasonably thereafter by not

---

[18] See supra note 4. Further, we note that respondent neither cites nor relies upon either sec. 301.7430-3(a)(4), Proced. & Admin. Regs., or sec. 301.7430-3(b), Proced. & Admin. Regs. Accordingly, no consideration is given to the possible effect of those provisions of the regulation. Cf. Lavallee v. Commissioner, T.C. Memo. 1997-183 at n.14; Ball v. Commissioner, T.C. Memo. 1995-520; see also Gustafson v. Commissioner, 97 T.C. 85, 93 (1991).

[19] The total amount for "services and expenses" according to such invoice is $976.75.

terminating collection.  Accordingly, we shall award costs to petitioners in the amount of $976.75.

To reflect the foregoing, as well as the agreed disposition of petitioners' Motion for Entry of Decision,[20]

<u>An appropriate order and decision will be entered (1) granting petitioners' Motion for Costs, as amended, to the extent indicated; and (2) granting petitioners' Motion for Entry of Decision, in the amount of the agreed overpayment</u>.

---

[20]    See <u>supra</u> note 2.